UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| PREFERRED CARE, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | Civil No. 16-152-ART |
| ) | |
| v. ) | |
| ) | |
| DAVID BLEEKER, *Administrator of the* ) | **MEMORANDUM OPINION** |
| *Estate of Della Bleeker*, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

For two weeks, Della Bleeker was a resident of Salyersville Nursing and Rehabilitation Center.[1] R. 1-2 ¶ 3. During her stay there, Della's son, David Bleeker, served as her appointed guardian. R. 1-3 (order of appointment of guardian). As guardian, David signed an arbitration agreement on behalf of Della. R. 1-1. Under that agreement, he promised to use arbitration to resolve "any and all disputes" about Della's stay at Salyersville. *Id.* at 1−2. In other words, if he had any claims of tort, contract, or other violations of Della's rights, he promised to pursue those claims through arbitration—not in a state or federal court. *Id.* at 1−2, 5.

When Della passed away, David believed that Salyersville was responsible. R. 1-2 (state-court complaint). So he sued Salyersville and its affiliates in state court on behalf of Della and her beneficiaries. *Id.* In his complaint, David alleged, among other things, that Salyersville negligently cared for Della, violated her rights as a long-term-care resident, and

---

[1] The four plaintiffs in this case are related entities: Preferred Care, Inc., Kentucky Partners Management, LLC, Salyersville Health Facilities, LP, and Preferred Care Partners Management Group, LP. R. 1. For simplicity, the Court will refer to the plaintiffs collectively as "Salyersville." Additionally, because this case involves both Della and David Bleeker, the Court will refer to each by first name to avoid confusion.

caused her wrongful death. *Id.* In response, Salyersville sued David in this Court. R. 1. In short, Salyersville alleges that David violated the arbitration agreement when he filed suit in state court. *Id.* ¶¶ 25−28. So, Salyersville wants the Court to enforce that agreement under the Federal Arbitration Act ("FAA"). *Id.* ¶ 27. David, on the other hand, wants out of the agreement. So he moves to dismiss this action on three grounds: lack of subject matter jurisdiction, *Colorado River* abstention, and failure to state a claim under Rule 12(b)(6). R. 8.

The Court has discussed—and decided—most of the issues surrounding Salyersville's arbitration agreement in a case with similar facts. *See Preferred Care, Inc. v. Howell*, No. 16-cv-13-ART, 2016 WL 2858523 (E.D. Ky. May 13, 2016). As such, the Court will touch only on the highlights here. In brief, the wrongful-death beneficiaries were not parties to the arbitration agreement, so the agreement is not enforceable against them. Thus, the Court will grant David's motion to dismiss with respect to those claims. The Court will also dismiss Counts II and III of the plaintiffs' complaint because they fail to state a claim upon which this Court can grant relief. But, for the reasons below, the Court will deny David's motion to dismiss with respect to the remaining claims.

I.

David first argues that the Court lacks subject matter jurisdiction over this case. R. 8-1 at 2−22. The FAA does not provide an independent basis of federal jurisdiction. *Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009). Thus, a federal court has jurisdiction over an FAA action only if there is another basis for jurisdiction. Here, Salyersville states that the other basis is diversity of citizenship. *See* 28 U.S.C. § 1332(a). Indeed, in its complaint, Salyersville asserts that it and its affiliates are citizens of Texas, that David is a citizen of Kentucky, and

that the amount in controversy is more than 75,000 dollars. R. 1 at 2−4. Typically, that is enough to establish diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

David argues that this is not the typical case. In his view, Salyersville has failed to join an indispensable party—Elaine Jones, a Salyersville employee who is a named defendant in his state-court action. R. 8-1 at 17−22. That allegation, if true, poses a problem because Jones, like David, is a Kentucky resident. *See* R. 8 at 2. So if she joined this federal suit, there would not be complete diversity and the Court would no longer have jurisdiction to hear the case. *See Wis. Dep't of Corrections v. Schact*, 524 U.S. 381, 388 (1998).

But there is just one problem for David: He sued Jones and Salyersville in state court as joint tortfeasors, alleging several acts of negligence against each of the parties. And, as the Court explained in *Howell*, joint tortfeasors are permissive, not indispensable, parties to an action to compel arbitration. *See Howell*, 2016 WL 2858523, at *2−3; *see also PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001) (holding that when a company sues a plaintiff to compel arbitration, the company need not join any of its employees—regardless if the plaintiff had joined all of the parties in state court). In other words, Salyersville properly brought this federal action without including Jones. As such, Salyersville's failure to join her in this case does not undermine this Court's jurisdiction. So David's first argument fails.

II.

David next argues that the Court should abstain from exercising jurisdiction because there is similar litigation pending in state court. R. 8-1 at 22−26. In support of this argument, he relies on the *Colorado River* abstention doctrine. *Id.* That doctrine is a narrow exception to the federal courts' "virtually unflagging obligation . . . to exercise the jurisdiction given them." *See Colo. River Water Conversation Dist. v. United States*, 424 U.S. 800, 817 (1976).

In some "exceptional" circumstances, a federal district court may abstain from exercising its jurisdiction due to a concurrent state-court action. *Id.* at 817. In deciding whether to abstain, the court must consider "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks omitted).

A district court must consider eight factors when deciding whether to abstain from exercising its jurisdiction in light of a related state-court action: (1) "whether the state court has assumed jurisdiction over any res or property"; (2) "whether the federal forum is less convenient to the parties"; (3) "avoidance of piecemeal litigation"; (4) "the order in which jurisdiction was obtained"; (5) "whether the source of governing law is state or federal"; (6) "the adequacy of the state-court action to protect the federal plaintiff's rights"; (7) "the relative progress of the state and federal proceedings"; and (8) "the presence or absence of concurrent jurisdiction." *Romine v. Compuserve Corp.*, 160 F.3d 337, 340−41 (6th Cir. 1998).

In *Howell*, the Court addressed the very same arguments that David now makes to support his assertion that the Court should abstain from exercising its jurisdiction. *See Howell*, 2016 WL 2858523, at *3−4. So, the reasoning applies with full force here: Although factors six and eight support abstention, "[a]ll of the other factors either favor federal jurisdiction or are, for the most part, neutral." *Id.* at *4. To summarize, David is correct that the state court can adequately protect the plaintiffs' rights (sixth factor), and there is concurrent jurisdiction in this case (eighth factor). But those two factors do not overcome the others—especially the fact that (1) the state-court action has not progressed significantly faster than the proceedings in this Court (seventh factor) and (2) federal law provides the rule of decision here because the only issue is whether David must arbitrate his claims (fifth factor). The Court's role is not to search for some special reason to *exercise* federal jurisdiction, but rather to determine whether

4

there are "exceptional circumstances, the clearest of justifications," to warrant "surrender[ing] that jurisdiction." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25−26 (1983). And here, no such exceptional circumstances exist. The Court will therefore exercise jurisdiction over this case.

### III.

Next, David argues that the plaintiffs' complaint should be dismissed because the underlying arbitration agreement is invalid and unenforceable. R. 8-1 at 26−34. In support, he states that the arbitration agreement (1) cannot bind Della Bleeker and her beneficiaries; (2) does not involve interstate commerce; and (3) is unconscionable. *Id.* at 32−34.

### A.

First, David contends that the arbitration agreement is unenforceable because, when he signed it, he did not have authority to bind Della or the wrongful-death beneficiaries. *Id.* at 29. David brought two categories of claims in his state-court action: (1) wrongful-death claims on behalf of Della's beneficiaries, *id.* ¶¶ 62−65, and (2) personal-injury and long-term-care-rights claims on behalf of Della herself, *id.* ¶¶ 25−47. The Court will address each category in turn.

### 1.

David first argues that he had no authority to bind the wrongful-death beneficiaries to arbitration because they never signed the agreement. R. 8-1 at 30, 32−34. Indeed, the Court ruled in *Howell* that "a decedent (or a representative thereof) has no authority to bind wrongful death beneficiaries to an arbitration agreement." 2016 WL 2858523, at *5. David signed the agreement on behalf of Della. The wrongful death claim, however, is not made on her behalf; instead, it "accrues separately to the wrongful[-]death beneficiaries" and "compensate[s] them

5

for their own pecuniary loss." *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 599 (Ky. 2012). Stated more plainly, David agreed to arbitrate claims that Della might bring against Salyersville. He did not (and could not) agree to arbitrate claims that Della's surviving family members might bring against Salyersville after she died. Holdings of the Kentucky Supreme Court and the Sixth Circuit confirm the same. *See Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 313−14 (Ky. 2016); *Ping*, 376 S.W.3d at 597−99; *see also Richmond Health Facilities v. Nichols*, 811 F.3d 192, 192−97 (6th Cir. 2016). Thus, it appears that the arbitration agreement does not cover the wrongful-death beneficiaries or their claims.

The plaintiffs acknowledge this Court's ruling in *Howell*, but attempt to avoid dismissal by distinguishing the Sixth Circuit's decision in *Nichols*. R. 9 at 34. In *Nichols*, the court considered the enforceability of an arbitration agreement between a decedent and a nursing facility. 811 F.3d at 192. The facility attempted to enforce the agreement against the executor of the decedent's estate, who asserted wrongful-death claims. *Id.* at 193−94. But the court held that the executor was "not required to arbitrate the wrongful-death claim" because only the facility and the decedent were parties to the agreement. *Id.* at 197. Further, the court explained that the decedent had no legal rights in a wrongful-death claim when he signed the agreement. *Id.*

Yet, the plaintiffs argue that *Nichols* is "unavailing." R. 9 at 34. In their view, *Nichols* does not apply here because David signed the agreement as Della's guardian, whereas in *Nichols*, the decedent himself signed the agreement. *Id.* But that argument makes a technical distinction without a functional difference. True, David signed the arbitration agreement, and David now sues Salyersville on behalf of the wrongful-death beneficiaries. But David's role was different then than now. David signed the agreement as Della's guardian. As explained

below, guardianship took certain rights away from Della and vested them in David. *See* Ky. Rev. Stat. (KRS) § 387.590(1). Essentially, he stepped into Della's shoes for all intents and (legal) purposes. And while in her shoes, he agreed to arbitrate any and all claims that *Della* might have against Salyersville. Now that Della has passed away, David does not bring his own wrongful-death claims in Della's shoes. Those claims belong to David as himself and to the other beneficiaries. *See Ping*, 376 S.W.3d at 599; *Nichols*, 811 F.3d at 197. The arbitration agreement does not extend to the wrongful-death claims that Della does not, and cannot, bring.[2] So, the plaintiffs' argument fails. Thus, the Court must dismiss the plaintiffs' complaint insofar as it seeks to compel arbitration of David's wrongful-death claims, R. 1-2 ¶¶ 62−65.

2.

David also argues that he lacked authority to bind Della to the arbitration agreement, although he signed it as her guardian. R. 8-1 at 28−30. Kentucky law says otherwise. Guardians have broad powers to ensure a ward's "care, comfort, and maintenance" and to "enable the ward to receive medical or other professional care." KRS § 387.660(2)−(3). Further, guardians are tasked with protecting and effecting the ward's "personal, civil, and human rights." *Id.* § 387.640. And when a guardian is appointed, the ward is stripped of several rights, including "the right . . . to enter into contractual relationships." KRS § 387.590(10). So it follows that these rights, once taken from the ward, are vested in the guardian to care for him. Guardians then retain that power unless a court says otherwise. *See* KRS § 387.660. Here, the court order appointing David as Della's guardian contains no

---

[2] Another judge of this Court recently held the opposite, distinguishing *Nichols* on the same grounds that the plaintiffs now raise. *See Diversicare Leasing Corp. v. Hall*, No. 0:15-cv-00029-HRW, D.E. 19 (E.D. Ky. Aug. 18, 2016). For the reasons stated above, the Court respectfully disagrees.

7

limitations. R. 1-3. Thus, David had authority to sign the agreement and bind Della to its terms.

David responds by comparing powers of attorney to guardianships. R. 8-1 at 29. But as the Court has explained before, the comparison is unwarranted. *See Preferred Care, Inc. v. Howell*, No. 16-cv-13-ART, 2016 WL 4470746, at *3−4 (E.D. Ky. Aug. 19, 2016). In a power of attorney, the person giving up his own rights (the "principal") defines exactly what his attorney-in-fact can do. *See Ping*, 376 S.W.3d at 592. By contrast, a guardian receives his power from the state: A court appoints a guardian when it determines that someone is unable to manage his own affairs. KRS § 387.590(10). From that point on, Kentucky law defines what the guardian can do. KRS § 387.660. As discussed above and in *Howell*, David—as a guardian under Kentucky law—had the authority to bind Della to the arbitration agreement.

B.

Second, David asserts that the arbitration agreement is invalid because it is a transaction between two Kentucky residents—David and Salyersville. *Id.* at 28. True, the FAA applies only to written agreements "evidencing a transaction involving commerce." 9 U.S.C. § 2. But the term "involving commerce" is the "functional equivalent" of "affecting commerce"— which is the "broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce Terminix Cos.*, 513 U.S. 265, 273−74 (2003)). Here, Salyersville received federal and state reimbursement for its operations, R. 1-2 ¶ 15, and the receipt of federal funds affects interstate commerce. *See United States v. Davis*, 707 F.2d 880, 884 (6th Cir. 1983) ("[Federal] funds plainly were in interstate commerce."). The arbitration agreement therefore involves interstate commerce.

8

C.

Finally, David argues that the arbitration agreement is unenforceable because it is unconscionable. An agreement between two parties is procedurally unconscionable when it uses "fine print and convoluted or unclear language" such that it becomes an "unfair surprise" to the non-drafting party. *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 342 n.22 (Ky. Ct. App. 2001) (quoting *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)). For example, an unconscionable contract might hide "material, risk-shifting" terms that the non-drafting party does not expect in a hard-to-read boilerplate form. *See Harris*, 183 F.3d at 181.

As grounds for his procedural unconscionability argument, David says that the agreement is "part of a mass-produced, boiler-plate, pre-printed document, likely presented to [him] within a lengthy stack of admissions paperwork." R. 8-1 at 31. Even if true, the agreement does not rise to the level of unconscionability. The document has several characteristics that mitigate the risk that the terms would "unfair[ly] surprise" David. *See Conseco*, 47 S.W.3d at 342 n.22. For example, the agreement begins with large, bold type that reads "Alternative Dispute Agreement." R.1-1 at 1. Next, the document says "SIGNING THIS AGREEMENT IS NOT A CONDITION OF ADMISSIBILITY OR CONTINUED RESIDENCE IN THE FACILITY." *Id.* Throughout the document, the text is in normal-sized font and clear language—the important terms bolded and underlined. *Id.* at 1−5. Finally, on the final page of the agreement, a disclaimer in bold, capital letters, indicates that the signing party waives his right to have the covered disputes decided by a court. *Id.* at 5. An agreement like this one—"stated in clear and concise language" that is "not hidden or obscured" is not

procedurally unconscionable. *Energy Home, Div. of S. Energy Homes, Inc.*, *v. Peay*, 406 S.W.3d 828, 836 (Ky. 2014).

David also contends that the agreement is substantively unconscionable. R. 8-1 at 31. Substantive unconscionability refers to contracts containing terms that are "unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Valued Servs. of Ky., LLC v. Watkins*, 309 S.W.3d 256, 263 (Ky. Ct. App. 2009) (quoting *Conseco*, 47 S.W.3d at 342 n.22). David asserts that the arbitration fees are too high and that the agreement's use of JAMS rules (a commonly used set of arbitration rules) stifles discovery. R. 8-1 at 31. But the agreement states that each party will be responsible for his own arbitration and attorney's fees. R. 1-1 at 3. And any discovery limitations in the agreement bind both parties equally. *Id.* So David's arguments miss the point: Substantive unconscionability refers to terms that are so one-sided that "no man in his senses, not under delusion" would ever offer them and that "no fair and honest man would accept." *Conseco*, 47 S.W.3d at 341. David has not shown any one-sidedness here; all of the limitations he contests apply to Salyersville and him alike. If David disagreed with those terms, he had the opportunity to decline the agreement.

IV.

David next moves to dismiss Counts II and III of the plaintiffs' complaint because they do not constitute causes of action. R. 8-1 at 35. David is correct. In those counts, the plaintiffs argue that a Kentucky Supreme Court case, *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), "violates [p]laintiffs' due process rights" and "abridges [p]laintiffs' [c]onstitutional right to equal protection under the laws." R. 1 ¶ 35, 44. But in making that argument, the plaintiffs state no "claim upon which relief can be granted" by this Court. Fed.

R. Civ. P. 12(b)(6). *Whisman* deals with the authority of an individual—acting pursuant to a power of attorney—to sign an arbitration agreement binding the person he is representing. *Whisman*, 478 S.W.3d at 306. That is not at issue here; this case is about the authority of a *guardian* to bind a ward to an arbitration agreement. *See Howell*, 2016 WL 4470746, at *3 n.4. The Court must therefore dismiss Counts II and III of the plaintiffs' complaint.

## V.

Finally, David asks the Court to dismiss the plaintiffs' claim for injunctive relief because, in his view, that relief would violate the Anti-Injunction Act ("AIA"). R. 8-1 at 35−38. Under the AIA, a court can enjoin state-court proceedings only if one of the following exceptions applies: (1) Congress has "expressly authorized" the stay, (2) the stay is "necessary in aid of [the Court's] jurisdiction," or (3) the stay is necessary to "protect or effectuate its judgments." 28 U.S.C. § 2283. The Sixth Circuit has decided that a district court that compels arbitration may enjoin state-court proceedings under the third exception of the AIA. *Great Earth Co. v. Simons*, 288 F.3d 878, 893 (6th Cir. 2002). Thus, the plaintiffs have stated a claim for injunctive relief "upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That is all that is required at the motion-to-dismiss stage.

## VI.

In sum, the arbitration agreement is not enforceable against the wrongful-death beneficiaries. Thus, the Court must dismiss the complaint, R. 1, insofar as it asks this Court to compel arbitration of their wrongful-death claims. Furthermore, Counts II and III of the plaintiffs' complaint fail to state a claim upon which this Court can grant relief. The Court must therefore dismiss those two counts, R. 1 ¶ 29−44. But the plaintiffs have sufficiently

stated a claim that the arbitration agreement is valid and enforceable as to the remaining claims in the underlying state-court complaint.

Accordingly, it is **ORDERED** as follows:

(1) The defendant's motion to dismiss, R. 8, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** as to the wrongful-death claims, as well as to Counts II and III of the plaintiffs' complaint, R. 1. It is **DENIED** as to the remaining claims in the underlying state-court complaint, R. 1-2.

(2) The defendant's motion for an extension to file a response to the plaintiffs' motion to compel arbitration, R. 11, is **GRANTED**. The defendant **SHALL RESPOND** to the plaintiffs' motion, R. 10, by **Monday, November 28, 2016.** The plaintiffs **may reply** by **Monday, December 5, 2016**.

This the 8th day of November, 2016.

Signed By:
_Amul R. Thapar_ AT
United States District Judge